Laleh Hawa
COX PADMORE SKOLNIK &
  SHAKARCHY LLP

27 Warren Street, Suite 304
Hackensack, NJ  07601
P: (201) 489-7600

630 Third Avenue, 23rd Floor
New York, NY 10017
P: (212) 953-6633
E: hawa@cpsslaw.com

Attorneys for Plaintiff
Green Star Energy Solutions, LLC

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GREEN STAR ENERGY SOLUTIONS, LLC, a Connecticut Limited Liability Company, | |
| Plaintiff, | Civil Action No.  2:21-cv-18267-BRM-JSA |
| v. | Hon. Brian R. Martinotti |
| NEWARK WAREHOUSE URBAN RENEWAL, LLC, a New Jersey Limited Liability Company, EDISON PROPERTIES, LLC, a New Jersey Limited Liability Company, EDISON CONSTRUCTION MANAGEMENT, LLC, a New York Limited Liability Company, and PASQUALE SURIANO, an individual domiciled in New Jersey, | **SECOND AMENDED COMPLAINT AND JURY DEMAND** |
| Defendants. | |

The Plaintiff, Green Star Energy Solutions, LLC, through its attorneys, Cox Padmore

Skolnik & Shakarchy LLP, complaining of the Defendants, Newark Warehouse Urban Renewal,

LLC, Edison Properties, LLC, Edison Construction Management, LLC, and Pasquale Suriano

1

(collectively the "Defendants"), respectfully files this Second Amended Complaint and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Green Star Energy Solutions, LLC ("Plaintiff" or "Green Star") is a limited liability company organized and existing under the laws of the State of Connecticut, where it has its principal place of business located in Fairfield County, Connecticut.

2.      Upon information and belief, defendant Newark Warehouse Urban Renewal, LLC ("NWUR") is a limited liability company organized and existing under the laws of the State of New Jersey.

3.      Upon information and belief, defendant Edison Properties, LLC ("Edison Properties") is a limited liability company organized and existing under the laws of the State of New Jersey.

4.      Upon information and belief, defendant Edison Construction Management, LLC ("Edison Management") is a limited liability company organized and existing under the laws of the State of New York.

5.      Upon information and belief, defendant Pasquale Suriano ("Suriano") is an individual domiciled in the State of New Jersey, and upon information and belief, was at all relevant times an Executive Vice President employed by Edison Properties and/or Edison Management.

6.      This Court has original jurisdiction pursuant to 28 USC § 1332 based on diversity because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.      Defendants are subject to the personal jurisdiction of this Court because they are residents of the State of New Jersey or have their principal place of business in the State of New

Jersey; and/or are domiciled in the State of New Jersey; and/or are incorporated or organized in the State of New Jersey; and/or have conducted, engaged in and carried out business activities within the State of New Jersey.

8.     Venue is proper in this judicial district under 28 U.S.C. 1391(b)(1) because, upon information and belief, defendants NWUR, Edison Properties and Suriano each reside in this judicial district.  Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## FACTUAL ALLEGATIONS

9.     This action concerns a construction project that took place in Newark, NJ (the "New Jersey Construction Project") where Green Star was hired as a subcontractor in connection with a property owned and/or managed by defendants NWUR, Edison Properties and Edison Management located at 110 Edison Place, Newark, NJ (the "Edison Place Property").   NWUR, Edison Properties and Edison Management are referred to hereafter collectively as the "Edison Defendants" or "Edison".

10.     Upon information and belief, NWUR owns or is owned by and/or controls or is controlled by Edison Properties and/or Edison Management, based on the following: (a) NWUR is listed as the "Owner" of the Edison Place Property in the General Contractor Construction Contract dated September 7, 2018, by and between NWUR and Hollister Construction Services LLC ("Hollister"), the general contractor on the New Jersey Construction Project; (b) while Hollister's subcontract with Green Star for the New Jersey Construction Project makes no mention of NWUR, it states in relevant part (with emphasis added) that the "project is for the 3rd floor corporate office fit out for **Edison Properties** located at Newark Warehouse at 110 Edison Place[,] . . . also known as '**Ironside**'", and (c) in email correspondence with Green Star

3

regarding the New Jersey Construction Project, Suriano's email signature states that he is "Executive Vice President of Engineering & Construction" for "Edison Properties". Further, Mr. Suriano's email signature also lists several New York City and New Jersey properties owned and/or managed by the Edison Defendants apparently through NWUR and/or other entities, and specifically lists "Ironside Newark" as one of those properties.

11.     Allegations herein of actions taken by the "Edison Defendants" or collectively by "Edison," include actions taken by Mr. Suriano acting on behalf of and/or at the direction of NWUR, Edison Properties and Edison Management, given that Suriano represented himself to Green Star as employed by and/or acting on behalf of all three of these entities.

12.     Green Star specializes in energy efficiency audits and in designing and installing high-efficiency HVAC systems using the latest technology to drive down energy use.

13.     The Edison Defendants began a relationship with Green Star in 2018 in connection with several construction projects for which Edison had brought in Green Star as the HVAC subcontractor. These projects included the New Jersey Construction Project, and also a construction project taking place at 543 West 43rd Street, New York, NY (the "NYC Construction Project").

14.     Upon information and belief, at all relevant times, defendant Pasquale Suriano was employed by Edison and spoke and acted on behalf of Edison with apparent and/or actual authority to speak and act on Edison's behalf with respect to the New Jersey Construction Project and the NYC Construction Project.

15.     In June of 2018, the Edison Defendants contacted Green Star and requested that they act as the HVAC subcontractor on the renovation of the 30,000 square foot Edison Place Property. Edison wanted Green Star as the subcontractor on the project because the HVAC

4

design and engineering proposed by Green Star offered deep cost savings and installation advantages for the Edison Defendants' complicated space which was to be their new headquarters.

16.     Green Star initially refused to take on the New Jersey Construction Project, because its management was concerned that in the event payments were delayed or slow in arriving, Green Star would suffer significant cash-flow problems.  This was due to the fact that Green Star is a boutique company with limited financial resources and had at that time already taken on $7 million worth of other projects; thus, it would be unable to fund the day-to-day operations of any additional work absent timely progress payments.

17.     However, management at Edison, specifically Defendant Pasquale Suriano, insisted that Green Star take on the project given that Green Star was already doing three other jobs for Edison, and that to maintain its status as Edison's "preferred" HVAC subcontractor, Green Star would have to take on the job.

18.     On or about July 16, 2018, Joe Novella, the CEO of Green Star, had a discussion with Mr. Suriano in which Mr. Novella communicated to Mr. Suriano that Green Star was already committed to other projects and that Green Star would only take on the New Jersey Construction Project if Green Star were paid every month without fail.  In his discussion with Mr. Suriano, he was emphatic that Green Star's cash flow was so tight that it would be highly detrimental to Green Star if it were not paid timely.

19.     During that conversation, Mr. Suriano promised Mr. Novella that Edison would instruct the general contractor (the "GC") on all future projects for Edison to pay Green Star timely without fail on all invoices, so long as Green Star became the HVAC subcontractor on each such project, and once again emphasized that to be Edison's "preferred" HVAC

subcontractor, Green Star would need to take on the New Jersey Construction Project, and any future projects requested, such as the NYC Construction Project.

20.     Unbeknownst to Mr. Novella during his July 16, 2018, conversation with Mr. Suriano, was that upon information and belief, during this conversation Mr. Suriano and Edison harbored the undisclosed intention to break their promise to instruct each future GC to pay Green Star timely on all invoices.  This belief is based on information later obtained by Green Star indicating that, upon information and belief, Edison – as a policy and regular practice – would defraud construction subcontractors by a preconceived plan and scheme from the outset of construction projects.  Upon information and belief, this preconceived plan and scheme consisted of inducing contractors and/or subcontractors such as Green Star to perform construction services by promises, in the case of Green Star made directly to the subcontractor, that were intentionally false when made and made with the intent to deceive and cause reliance by the contractors and  subcontractors like Green Star, that Edison would pay all invoices in a timely manner, upon which promises contractors and subcontractors such as Green Star would and did rely to enter into a contract with respect to the construction project and to continue work, when in fact from the outset of the construction project Edison had no intention of paying, and did fail and refuse to pay the GC on the subcontractor's final invoice, without any valid reason or basis but with the result intended by Edison that the contractor or subcontractor would be crippled and deprived of adequate resources to continue its business or enforce its rights against Edison (the "Edison Final-Payment Fraud").  Upon information and belief, this pattern and practice of fraudulent conduct has resulted in millions of dollars of savings for Edison on multiple construction projects.

21.     In line with the Edison Final-Payment Fraud, upon information and belief, Edison and/or its affiliated entities refused to pay the final invoices submitted by multiple subcontractors on prior occasions, including such subcontractors as Control Services LLC and the now bankrupted Starlight Electric Inc.

22.     Upon information and belief based on Green Star's ongoing investigations and discussions with individuals in the New York City and New Jersey construction industry, Green Star believes that there are numerous additional subcontractors who have fallen victim to the Edison Final-Payment Fraud scheme.

23.     Based on Edison's pattern and practice with respect to the Edison Final-Payment Fraud, upon information and belief, at the time Mr. Suriano and Edison made their promise to Mr. Novella that Edison would instruct the GC to make timely payments to Green Star, Suriano and Edison had planned specifically to withhold final payment from Green Star, just as they had done with the numerous other subcontractors they had previously defrauded.

24.     In direct reliance on Mr. Suriano's assurances that Green Star would get paid timely, on or about September 18, 2018, Green Star entered into a contract with Hollister for Green Star to act as the HVAC subcontractor on the New Jersey Construction Project.

25.     Despite Mr. Suriano's assurances that Green Star would get paid timely on a monthly basis on the New Jersey Construction Project, Green Star was never paid in a timely manner, including a four-month period between progress payments from October of 2018 through February of 2019.

26.     Due to various problems with management of the renovation project by Hollister, including multiple permitting issues, the New Jersey Construction Project dragged on into 2019 despite initially having a target completion date for the end of 2018.

27.     Upon information and belief, due to the Edison Defendants' dissatisfaction with Hollister's handling of the project, in or about March of 2019, the Edison Defendants took over direct management of the New Jersey Construction Project from Hollister, with an employee of the Edison Defendants named Robert Gerardo taking over the duties of managing the renovation construction.  Although Hollister was still technically the general contractor of record, and still had workers and subcontractors on site, the day-to-day management of the project was taken over directly by the Edison Defendants.

28.     Through March 13, 2019, progress payments were made to Green Star by Hollister on the New Jersey Construction Project, totaling approximately $593,895.73.

29.     On April 2, 2019, Edison Properties made payment directly to Green Star on the New Jersey Construction Project in the amount of $156,275.57.

30.     In April and May of 2019, Edison was putting tremendous pressure on Green Star to complete the HVAC work on the New Jersey Construction Project.

31.     However, Green Star's ability to complete the work was hampered by delays caused by Edison, Hollister and other subcontractors.

32.     In addition, upon information and belief, Edison, by its project manager, Robert Gerardo, intentionally hindered Green Star's progress on the New Jersey Construction Project in an attempt to sabotage Green Star's ability to adhere to the project schedule, by withholding critical information and limiting access to the work site.

33.     Despite these impediments, in the final month Green Star maintained a full crew and effectively completed the contracted work on the New Jersey Construction Project prior to the "move-in" date of June 1, 2019.

34.     All that remained as of June 1, 2019, was minor work related to ventilation equipment – which work had been pushed back due to delays caused by Hollister and other subcontractors on the New Jersey Construction Project, and upon information and belief, the intentional actions of the Edison Defendants discussed above.

35.     On, May 30, 2019, Green Star's final scheduled workday on the New Jersey Construction Project prior to building occupancy, Green Star had only to finish installing two fire dampers to complete all work it had been subcontracted to do, with the exception of potential warranty work.

36.     Despite this, Mr. Suriano on behalf of Edison emailed to Green Star on May 30, 2019, a message threatening termination of Green Star from the New Jersey Construction Project.   The message – which did not constitute formal notice of termination under the contract – was false, and upon information and belief, intentionally false, as it did not have any factual basis with respect to the status of the project at that time and the work Green Star had performed.

37.     On or about May 30, 2019, Green Star was locked-out of the New Jersey Construction Project site, in breach of Green Star's subcontract with Hollister.

38.     Green Star was intentionally locked out so that it would be impossible for them to finish work or to perform any warranty work on the New Jersey Construction Project as provided for under the subcontract.

39.     Further, Green Star had no prior formal notice that it would be "terminated" from the New Jersey Construction Project and was not provided an opportunity to address any deficiencies, as was required under its subcontract with Hollister.

40.     As of May 30, 2019, Green Star's work under the New Jersey Construction Project was essentially complete and the heating and AC equipment were in full operation, with

only minor "punch list" work remaining.  In subsequent false emails, which were upon information and belief intentionally false, Mr. Suriano stated that Green Star had "abandoned" the job – when in fact Green Star had been locked-out by Edison – and that Green Star owed "back charges" for corrective work in excess of the remaining balance owed on Green Star's final invoice.  No further payments were ever made to Green Star.

41.     To further its predatory practices against Green Star, in the months prior to completion, several of Green Star's on-site technicians at the New Jersey Construction Project were solicited for employment directly by the Edison Defendants by their employees Robert Gerardo, Joe Pipia, and Brian Harvey, in an attempt to cut out Green Star from the project and to complete the project with employees hired directly by Edison.

42.     Edison recruited Green Star's lead technician Domingus Guttierez whose responsibilities on the New Jersey Construction Project (and Green Star's other projects) was the final commissioning of the HVAC system, which entails the crucially important final phase where all of the installed HVAC equipment is programmed and configured to work together properly prior to start-up and final delivery.

43.     On or about June 14, 2019, in an electronic mail with Joe Novella of Green Star, Defendant Pasquale Suriano intentionally and falsely stated that Edison had not in fact hired Domingus Guttierez.

44.     Despite Green Star having submitted all required paperwork and backup documentation on the New Jersey Construction Project, Green Star's final invoice of $220,060.58 remains outstanding.

45.     Green Star made several requests to both Hollister and Edison for payment of its final invoice on the New Jersey Construction Project.  Edison refused to make the final payment.

46.     At no time did Edison provide any documentary or other evidence to Green Star as to the reasons why Edison refused to make the final payment on the New Jersey Construction Project, nor did Edison or Hollister ever provide Green Star with any formal written notice of deficiency or opportunity to cure under the subcontract, despite Mr. Suriano's claims that Edison would provide such backup to Green Star.

47.     Nor was Green Star given any opportunity to cure or conduct any alleged corrective work on the New Jersey Construction Project as permitted under its contract with Hollister and standard industry practice.

48.     Upon information and belief, the Edison Defendants and Mr. Suriano intentionally lied to and misled Mr. Novella of Green Star in connection with Edison's promises to ensure timely payments during the New Jersey Construction Project, which were not forthcoming during the project, nor at the completion of the project.

49.     At all relevant times, Mr. Suriano and Edison were well aware of the financial distress Green Star was under as a result of Edison's failure to make timely progress payments as promised, such that they knew that withholding payments on the New Jersey Construction Project would cause severe and irreparable damage to Green Star's operations and reputation.

50.     Upon information and belief, Mr. Suriano of Edison intentionally lied to Mr. Novella of Green Star with respect to the reasons why Edison was refusing to make the final payment to Green Star on the New Jersey Construction Project.

51.     Upon information and belief, the Edison Defendants by and together with Defendant Pasquale Suriano conspired to defraud Green Star of the final amount due, by fraudulently inducing Green Star to sign the contract with Hollister and to work on the New

Jersey Construction Project with the prior intentions of withholding payments from Green Star and/or not making timely payments to Green Star.

52.     Upon information and belief, in furtherance of the foregoing fraudulent conduct the Defendants conspired with Mr. Gerardo and Mr. Pipia to deliberately sabotage Green Star's work on the New Jersey Construction Project, in order to fabricate an excuse to "terminate" Green Star at the very end of the project and to withhold payment.

53.     Upon information and belief, the foregoing fraudulent conduct was part of the pre-conceived Edison Final-Payment Fraud scheme, consisting of a plan and course of action on the part of Suriano and the Edison Defendants to cripple Green Star by depriving it of adequate resources to continue its business or to enforce its rights against Edison as to both the New Jersey Construction Project and the NYC Construction Project, as they had done with numerous other prior contractors and subcontractors.  This belief is based upon the fraudulent and tortious conduct of Suriano, Mr. Pipia and the Edison Defendants in connection with the NYC Construction Project, which is the subject of the companion case pending before the United Stated District Court for the Southern District of New York styled as *Green Star Energy Solutions, LLC v. Edison Properties, LLC et al* (SDNY 1:21-cv-02682-LJL) (the "New York Action").  As set forth in the New York Action, Green Star was deprived of payment on its final invoice there as well, just as it had been deprived of final payment on the New Jersey Construction Project.  Further, upon information and belief, Suriano and the Edison Defendants have fraudulently deprived numerous other contractors of final invoice payments on these and other construction projects as part of the Edison Final-Payment Fraud scheme, resulting in financial ruin for those contractors.  Thus, Suriano and the Edison Defendants have engaged in a

pattern evidencing a pre-conceived plan to defraud Green Star and numerous other construction contractors.

54.     As a result of Defendants' refusal to make timely payments on both the New Jersey Construction Project and the NYC Construction Project, and the resulting interruption of cash flow, Green Star was forced to cease operations and cancel all then-current and future projects.  Specifically, Green Star was unable to continue making payments to key suppliers and employees on other ongoing projects in 2019 and 2020, resulting in Green Star having to cease its operations and to pull out of those projects that had already commenced.  As a result, Green Star is in a far worse of a position than prior to the Defendants fraudulent conduct, having suffered direct monetary losses, lost profits, lost business opportunities and other monetary damages in excess of one million dollars.

55.     Upon information and belief, in late 2019, Hollister filed for protection under Chapter 11 of the bankruptcy laws of the United States and is currently in bankruptcy proceedings in the United States Bankruptcy Court for the District of New Jersey.

## COUNT I
## Fraudulent Inducement (Against All Defendants)

56.     Green Star realleges the allegations set forth in the prior paragraphs as though fully set forth herein.

57.     As discussed above, Suriano, and/or the Edison Defendants, repeatedly made material misrepresentations of presently existing and past facts to Green Star, which, upon information and belief, they knew to be untrue, with the intention of both (i) inducing Green Star's reliance on those false statements to enter into the subcontract with Hollister on the New Jersey Construction Project, and (ii) inducing Green Star into forbearing any further inquiry into

the  truth of those statements during the time Green Star was performing work on the New Jersey Construction Project.

58.     Specifically, on or about July 16, 2018, Mr. Suriano assured Mr. Novella that Green Star would be paid timely in connection with both the New Jersey Construction Project and future projects, such as the NYC Construction Project.  Upon information and belief, these statements by Mr. Suriano on behalf of Edison were intentionally false and misleading with a preconceived intent to deceive Green Star, and designed to induce Green Star to sign the contract with Hollister and to work on the New Jersey Construction Project and any other subsequent projects, with the prior intention of: (i) withholding payment from Green Star at the end of its work on the New Jersey Construction Project in conjunction with further material false statements of fact, which upon information and belief were intentionally false and designed to colorably justify the fraudulent withholding of payments and damage Green Star's liquidity so that it would not have the financial resources to fight Edison or continue in business; and (ii) without basis "terminating" Green Star from the New Jersey Construction Project.

59.     On or about May 30, 2019, Mr. Suriano on behalf of Edison emailed to Green Star a message containing false statements with respect to the status of the project at that time and the work Green Star had performed, as an alleged justification for: (i) threatening "termination" of Green Star's subcontract on the New Jersey Construction Project, (ii) locking-out Green Star from the project site, and (iii) refusing to pay Green Star's final invoice.  Upon information and belief, these statements by Mr. Suriano on behalf of Edison were knowingly and intentionally false.

60.     In entering into its subcontract with Hollister on the New Jersey Construction Project, Green Star reasonably and justifiably relied upon the materially false statements of fact made by Suriano and/or the Edison Defendants.

61.     In performing and continuing to perform its work on the New Jersey Construction Project and forbearing any investigation of the truthfulness of the statements made by Suriano, Green Star reasonably and justifiably relied upon the material false statements of fact made by Suriano and/or the Edison Defendants.

62.     Green Star has been damaged as a result of Suriano's and the Edison Defendants' wanton, willful, malicious, fraudulent and intentional materially false statements of fact in an amount to be determined at trial, including, without limitation, monetary damages for direct monetary losses, lost profits, lost business opportunities, and other monetary damages in excess of one million dollars.  In addition, Green Star should be awarded punitive damages due to Mr. Suriano's and the Edison Defendants' gross, wanton, and/or willful fraud and/or other morally culpable conduct.

## COUNT II
## Fraud (Against All Defendants)

63.     Green Star realleges the allegations set forth in the prior paragraphs as though fully set forth herein.

64.     Defendant Suriano and/or the Edison Defendants, repeatedly made material misrepresentations of presently existing and past facts to Green Star, as part of the preconceived plan and scheme from the outset of the New Jersey Construction Project, i.e., the Edison Final-Payment Fraud scheme.

65.     Upon information and belief, this preconceived plan and scheme consisted of inducing Green Star to enter into a contract and to perform construction services by material

15

misrepresentations of presently existing and past facts, made directly to Green Star, for the purpose and intent of fraudulently inducing Green Star to rely on those misrepresentations in deciding to enter into its contract on the New Jersey Construction Project, and to continue its work on the New Jersey Construction Project.

66.     Green Star would and did rely on these false promises to enter into a contract for the New Jersey Construction Project and to continue work.

67.     In fact, from the outset of the New Jersey Construction Project, Edison had no intention of paying, and did fail and refuse to pay the GC on Green Star's final invoice, without any valid reason or basis but with the result intended by Edison that Green Star was not paid by the GC and was crippled and deprived of adequate resources to continue its business and is struggling to enforce its rights against Edison.

68.     Thusly, upon information and belief, Suriano and Edison made material misrepresentations of presently existing and past facts, upon information and belief intentionally false and made with the intent to deceive Green Star, which concealed the purpose and intent of fraudulently inducing Green Star to enter into its contract on the New Jersey Construction Project, and to continue its work on the New Jersey Construction Project.

69.     Specifically, as discussed above, on or about July 16, 2018, Mr. Suriano assured Mr. Novella that Green Star would be paid timely in connection with both the New Jersey Construction Project and future projects, such as the NYC Construction Project.   Upon information and belief, these statements by Suriano and/or the Edison Defendants consisted of misleading and material misrepresentations of presently existing and past facts designed to induce Green Star to sign the contract with Hollister and to work on the New Jersey Construction Project and any other subsequent projects, with the prior intention of: (i) withholding final

16

payment from Green Star on the New Jersey Construction Project in conjunction with further material false statements of fact, which upon information and belief were intentionally false and designed to colorably justify the fraudulent withholding of payment to damage Green Star's liquidity so that it would not have the financial resources to fight Edison or continue in business.

70.     Further, as discussed above, on or about May 30, 2019, Suriano emailed to Green Star a message containing statements that consisted of material misrepresentations of presently existing and past facts with respect to the status of the project at that time and the work Green Star had performed, as an alleged justification for: (i) threatening "termination" of Green Star's subcontract on the New Jersey Construction Project, (ii) locking-out Green Star from the project site, and (iii) refusing to pay Green Star's final invoice.  Upon information and belief, these statements by Mr. Suriano and/or the Edison Defendants were intentionally false.

71.     In entering into its subcontract with Hollister on the New Jersey Construction Project, Green Star reasonably and justifiably relied on the above false statements made by Suriano and/or the Edison Defendants.

72.     In performing and continuing to perform its work on the New Jersey Construction Project, Green Star reasonably and justifiably relied upon the above false statements made by Suriano and/or the Edison Defendants.

73.     Green Star has been damaged as a result of Mr. Suriano's and the Edison Defendants' wanton, willful, malicious, fraudulent and intentional material false statements of fact in an amount to be determined at trial, including, without limitation, monetary damages for direct monetary losses, lost profits, lost business opportunities and other monetary damages in excess of one million dollars.  In addition, Green Star should be awarded punitive damages due

to Mr. Suriano's and the Edison Defendants' gross, wanton, and/or willful fraud and/or other morally culpable conduct.

**COUNT III**
**Tortious Interference with Contracts (Against All Defendants)**

74.      Green Star realleges the allegations set forth in the prior paragraphs as though fully set forth herein.

75.      Green Star had a valid contract with Hollister to act as the subcontractor on the New Jersey Construction Project.

76.      The Edison Defendants and Suriano each had knowledge of this contract.

77.      At the direction of the Edison Defendants and/or Suriano, Hollister breached its contract with Green Star, by failing to make payment to Green Star on its final requisition.

78.      At the direction of the Edison Defendants and/or Suriano, Hollister breached its contract with Green Star by failing to make timely payments to Green Star.

79.      Upon information and belief, the Edison Defendants and Suriano each intentionally and maliciously procured Hollister's breach of its contract with Green Star on the New Jersey Construction Project by locking Green Star from the site and failing to allow Green Star onto the project site and failing to seek warranty work from Green Star.

80.      In addition, upon information and belief, the Edison Defendants and Suriano each intentionally and maliciously procured Hollister's breach of its contract with Green Star on the New Jersey Construction Project, by taking the actions and making the fraudulent and false statements  described above, including, without limitation, refusing to make payment to Hollister on the amounts owed for the work performed by Green Star, and instructing Hollister to use a different subcontractor for warranty work which actions were grounded in material part on

fraudulent, malicious and false accusations and statements that Green Star would be paid timely and/or for false statements regarding Green Star's purported failure to perform.

81.     Green Star has been damaged as a result of the Defendants' intentional and malicious interference with the contract and relationship between Green Star and Hollister, in an amount to be determined at trial.

## COUNT IV
## Breach of Contract (Against the Edison Defendants)

82.     Green Star realleges the allegations set forth in the prior paragraphs as though fully set forth herein.

83.     The Edison Defendants and Green Star entered into an oral contract, whereby in return for Green Star becoming the HVAC subcontractor on the New Jersey Construction Project,  Suriano and/or the Edison Defendants, assured Green Star that it would be paid timely on a monthly basis on each invoice it issued on the project, regardless of whether each payment was to be made by Hollister or directly by one or more of the Edison Defendants, or by some other party (the "Oral Contract").

84.     Green Star performed all of its required obligations under the Oral Contract, by becoming the HVAC subcontractor on the New Jersey Construction Project, and by completing substantially all of its required work on the New Jersey Construction Project.

85.     Despite the Edison Defendants' assurances that Green Star would get paid timely on a monthly basis, Green Star was never paid in a timely manner, including a four-month period between progress payments from October of 2018 through February of 2019.

86.     Although on April 2, 2019, defendant Edison Properties made payment directly to Green Star in the amount of $156,275.57, Green Star never received payment on its final invoice, and is still owed $220,060.58 for its work on the New Jersey Construction Project.

87.     By failing to assure that Green Star received timely progress payments, the Edison Defendants breached the Oral Contract.

88.     Green Star's damages are for $220,060.58 as per its final requisition, plus pre-judgment interest as it continues to accrue.

89.     Green Star is entitled to a judgment in its favor against the Edison Defendants in an amount to be proven at trial.

## COUNT V
## Breach of Contract – Third Party Beneficiary (Against the Edison Defendants)

90.     Green Star realleges the allegations set forth in the prior paragraphs as though fully set forth herein.

91.     Hollister entered into a general construction contract with one or more of the Edison Defendants in connection with the New Jersey Construction Project (the "General Contract").

92.     Pursuant to the contract language regarding subcontractors contained in the General Contract, Green Star is an intended third-party beneficiary of the General Contract.

93.     By virtue of the direct payment made by Edison Properties to Green Star on April 2, 2019, the Edison Defendants acknowledged Green Star's status as an intended third-party beneficiary under the General Contract.

94.     The Edison Defendants never made final payment directly to Green Star with respect to its final invoice on the New Jersey Construction Project.

20

95.     The Edison Defendants breached Green Star's rights as a third-party beneficiary under the General Contract by refusing to make payment directly to Green Star on its final invoice on the New Jersey Construction Project.

96.     As a result of the Edison Defendants' breach of Green Star's third-party beneficiary rights under the General Contract, Green Star has incurred damages of $220,060.58, plus pre-judgment interest as it continues to accrue.

97.     Green Star is entitled to a judgment in its favor against the Edison Defendants in an amount to be proven at trial.

## COUNT VI
### Quantum Meruit (Against the Edison Defendants – Pled in the Alternative)

98.     Green Star realleges the allegations set forth in the prior paragraphs as though fully set forth herein.

99.     Green Star designed and installed the HVAC system for the Edison Place Property.

100.     Green Star rendered these services and provided labor and equipment in good faith that it would be fully compensated for its work.

101.     The Edison Defendants accepted the benefits of the work on the HVAC system, and repeatedly promised to ensure timely and full payments to Green Star in connection with the work.

102.     The Edison Defendants accepted the benefits of the work on the HVAC system.

103.     Green Star expected to be compensated for all of the labor, equipment and work it performed.

104.     The reasonable value of the labor, equipment and work rendered is $1.1 million.

105.     Green Star received payments totaling $879,939.42.

21

106.    Green Star is still owed $220,060.58.

107.    The $220,060.58 remains unpaid and outstanding, plus pre-judgement interest that continues to accrue.

108.    To the extent the Court does not find in favor of Green Star on its claims based on breach of contract herein, alternatively Green Star is entitled to a judgment in its favor against the Edison Defendants for quantum meruit damages in an amount to be proven at trial.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, GREEN STAR ENERGY SOLUTIONS LLC, prays for a judgment in its favor and against Defendants, jointly and severally, granting the following relief:

109.    Final Judgment in favor of Plaintiff on each claim set forth herein.

110.    On Count I for Fraudulent Inducement against all of the Defendants, a judgment in an amount to be determined at trial, including, without limitation, for monetary damages for lost profits due to lost business opportunities, as well as for punitive damages, together with interest, fees and costs.

111.    On Count II for Fraud against all of the Defendants, a judgment in an amount to be determined at trial, including, without limitation, for monetary damages for lost profits due to lost business opportunities, as well as for punitive damages, together with interest, fees and costs.

112.    On Count III for Tortious Interference with Contracts against all of the Defendants, a judgment in an amount to be determined at trial, together with interest, fees and costs.

113.    On Count IV for Breach of Contract against the Edison Defendants, a judgment in an amount no less than $220,060.58, together with interest, fees and costs.

114.    On Count V for Breach of Contract – Third Party Beneficiary against the Edison Defendants, a judgment in an amount no less than $220,060.58, together with interest, fees and costs

115.    On Count VI for Quantum Meruit (Pled in the Alternative) against the Edison Defendants, a judgment in an amount no less than $220,060.58, together with interest, fees and costs.

116.    That Plaintiff be awarded all other damages it has sustained by reason of Defendants' wrongful acts, including punitive damages, and that such damages be trebled to the maximum extent allowed by law.

117.    That Defendants be required to compensate Plaintiff for all of Plaintiff's litigation expenses, including reasonable attorneys' fees and costs.

118.    That Plaintiff be awarded prejudgment and post-judgment interest on the above monetary awards.

119.    For such other and further relief as the Court deems just and proper, including without limitation, awarding Plaintiff its compensatory, consequential, and special damages including, without limitation, its lost profits, as well as exemplary and treble damages, as well as punitive damages based on the egregious intentional and willful misconduct of Defendants, as well as Plaintiffs' reasonable attorneys' fees and costs, all together with pre and post judgment interest, as provided by law.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38, Fed. R. Civ. P., Plaintiff demands a jury trial on all issues triable of right by a jury.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to Local Civil Rule 11.2, the undersigned attorney for Plaintiff, Green Star Energy Solutions, LLC, certifies that with respect to the matters in controversy herein, neither Plaintiff nor Plaintiff's attorney is aware of any other action pending in any court, or of any pending arbitration proceeding, to which this matter is subject, except specifically set forth in the Second Amended Complaint.  With respect to pending federal court proceedings to which this matter is subject, the undersigned attorney for Plaintiff certifies that all such proceedings and the parties thereto have been identified in the Second Amended Complaint.

## CERTIFICATION OF NON-ARBITRABILITY

Pursuant to Local Civil Rule 201.1(d)(2), the undersigned attorney for Plaintiff, Green Star Energy Solutions, LLC, certifies that this action is not eligible for arbitration under Local Civil Rule 201.1 because the relief sought in the Second Amended Complaint includes damages believed to be in excess of $150,000.00, exclusive of interest, and costs.

**COX PADMORE SKOLNIK & SHAKARCHY LLP**

By: _____
        Laleh Hawa

27 Warren Street, Suite 304
Hackensack, NJ  07601
P: (201) 489-7600

630 Third Avenue, 23rd Floor
New York, NY 10017
P: (212) 953-6633
E: hawa@cpsslaw.com

*Attorneys for Plaintiff*
*Green Star Energy Solutions, LLC*

DATED: February 17, 2021