<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GREEN STAR ENERGY SOLUTIONS, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>NEWARK WAREHOUSE URBAN RENEWAL, LLC, EDISON PROPERTIES, LLC, EDISON CONSTRUCTION MANAGEMENT, LLC, and PASQUALE SURIANO,<br><br>     Defendants. | No. 21cv18267 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

Presently before the Court is Defendants Newark Warehouse Urban Renewal, LLC ("NUWR"), Edison Properties, LLC ("Edison Properties"), Edison Construction Management LLC ("Edison Construction"), and Pasquale Suriano's motion to dismiss all six counts in Plaintiff Green Star Energy Solutions, LLC's ("Green Star's") Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants also move to strike paragraphs 20-22 of the SAC under Rule 12(f). The Court has reviewed the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the reasons stated below, Defendants' motion is **GRANTED in part** (as to Counts I, II, IV, and V) and **DENIED in part** (as to Counts III and VI, and with respect to Defendants' motion to strike paragraphs 20-22 of the SAC).

I.     BACKGROUND[1]

Plaintiff Green Star is an HVAC subcontractor who claims that it remains owed $220,060.58 for construction services it provided at 110 Edison Place, Newark, New Jersey (the "Edison Place Property"). D.E. 45 ¶¶ 9, 12, 44. The Edison Place Property is "owned and/or managed by" NUWR, Edison Properties, and Edison Construction (collectively, the "Edison Defendants"). *Id.* ¶ 9. Defendant Pasquale Suirano is Edison Properties' Executive Vice President of Engineering & Construction. *Id.* ¶ 10. Suriano acted and spoke on behalf of the Edison Defendants with respect to construction work being performed at the Edison Place Property. *Id.* ¶ 14.

In June of 2018, the Edison Defendants contacted Green Star and requested that it act as the HVAC subcontractor on the renovation of the 30,000 square foot Edison Place Property (the "Edison Project"). *Id.* ¶ 15. On or about July 16, 2018, Suriano and Green Star's CEO, Joe Novella, discussed Green Star's reservations about working on the Edison Project given its limited financial resources. *Id.* ¶ 18. Novella advised Suriano that Green Star could only work on the Edison Project if Green Star was paid for its work "every month without fail." *Id.* ¶ 18. Suriano "promised [Novella] that [the Edison Defendants] would instruct the general contractor . . . to pay Green Star timely without fail on all invoices." *Id.* ¶ 19.

On or about September 7, 2018, Green Star entered into a contract with general contractor/non-party Hollister Construction Services LLC ("Hollister") to provide certain HVAC construction services at the Edison Place Property. *Id.* ¶ 10. Green Star was never paid for its work on the Edison Project in a timely manner, "including [during] a four-month period between

---

[1] For the purposes of this Opinion, the Court accepts as true all of the SAC's well-pled factual allegations.

progress payments from October of 2018 through February of 2019." *Id.* ¶ 25.  Through March 13, 2019, Hollister made progress payments to Green Star totaling $593,895.73 for its work on the Edison Project. *Id.* ¶ 28.

Around March of 2019, the Edison Defendants took over direct day-to-day management of the Edison Project due to their dissatisfaction with Hollister. *Id.* ¶ 27.  Hollister, however, "was still technically the general contractor of record, and still had workers and subcontractors on site." *Id.* ¶ 27.  On April 2, 2019, Edison Properties paid Green Star $156,275.57, directly, for work on the Edison Project. *Id.* ¶ 29.

On May 30, 2019, Suriano emailed Green Star a message threatening to terminate it from the Edison Project. *Id.* ¶ 36.  May 30, 2019 was also "Green Star's final scheduled workday on the [Edison Project] prior to building occupancy." *Id.* ¶ 35.  As of that date, "Green Star had only to finish installing two fire dampers to complete all work it had been subcontracted to do, with the exception of potential warranty work." *Id.* ¶ 35.  "Green Star[, however,] was locked out of the [Edison Project] site." *Id.* ¶ 37.  This was intentionally done so that it would be impossible for Green Star to finish work or to perform any warranty work required by the subcontract. *Id.* ¶ 38.

Green Star alleges that Edison Defendants' employee/project manager on the Edison Project, Robert Gerardo, "intentionally hindered Green Star's progress . . . in an attempt to sabotage Green Star's ability to adhere to the project schedule, by withholding critical information and limiting access to the work site." *Id.* ¶ 32.  Green Star also alleges that in the months prior to completion of the Edison Project, the Edison Defendants attempted to hire several of Green Star's on-site technicians away from Green Star "in an attempt to cut out Green Star from the project and to complete the project with employees hired directly by Edison." *Id.* ¶ 41.  The Edison Defendants

3

eventually hired Green Star's lead technician and thereafter falsely denied this fact in a June 14, 2019 email. *Id.* ¶¶ 42, 43.

Green Star nonetheless "effectively completed [all of its] contracted work on the [Edison Project]" prior to June 1, 2019. *Id.* ¶ 33. As of June 1, 2019, the only work that remained for Green Star to complete "was minor work related to ventilation." *Id.* ¶ 34. This work had not yet been completed by Green Star "due to delays caused by Hollister[,] other subcontractors . . . and the intentional actions of the Edison Defendants." *Id.* ¶ 34.

"In subsequent false emails, . . . , Mr. Suriano stated that Green Star had 'abandoned' the job – when in fact Green Star had been locked-out by Edison – and that Green Star owed 'back charges' for corrective work in excess of the remaining balance owed on Green Star's final invoice. No further payments were ever made to Green Star." *Id.* ¶ 40. "Despite Green Star having submitted all required paperwork and backup documentation on the [Edison] Project, Green Star's final invoice of $220,060.58 remains outstanding." *Id.* ¶ 44.

Green Star alleges that the Edison Defendants' refusal to pay Green Star the balance sought in its final invoice is part of a larger general practice of refusing to pay the final invoices submitted by subcontractors who have performed work on numerous other construction projects involving the Edison Defendants (the "Edison Final-Payment Scheme"). *Id.* ¶¶ 20-22. Green Star alleges, upon information and belief, that the Edison Defendants, as part of this alleged scheme, would make express promises to those contractors and subcontractors that they would be paid for their work on Edison-related projects in a timely manner, and that the Edison Defendants made those promises knowing full well that the final payments owed to those contractors and subcontractors would ultimately be withheld. *Id.* ¶ 20. Green Star alleges, "upon information and belief, [that the Edison Defendants] and/or its affiliated entities refused to pay the final invoices submitted by

4

multiple subcontractors on prior occasions, including such subcontractors as Control Services LLC and the now bankrupted Starlight Electric Inc." *Id.* ¶ 21. "Green Star [also] believes [that] there are numerous additional subcontractors who have fallen victim to the Edison Final-Payment Scheme." *Id.* ¶ 22.

Green Star filed the SAC on February 17, 2022. D.E. 45. That pleading contains six counts: Count I – Fraudulent Inducement (against all Defendants); Count II – Fraud (against all Defendants); Count III – Tortious Interference with Contracts (against all Defendants); Count IV – Breach of Contract (against the Edison Defendants); Count V – Breach of Contract - Third Party Beneficiary (against the Edison Defendants); and Count VI – Quantum Meruit – Pled in the Alternative (against the Edison Defendants). *Id.*

On June 1, 2022, Defendants moved to dismiss all six counts pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 58. Defendants also move to strike paragraphs 20-22 of the SAC pursuant to Rule 12(f). *Id.* Green Star opposes the motion. D.E. 59. Defendants have replied. D.E. 60.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. However, the allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While

"[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. As the moving party, the defendant bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of the motion, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

In addition, Rule 9(b) imposes a heightened pleading standard on fraud-based claims, requiring a party to "state the circumstances constituting fraud with particularity." *Klein v. Gen. Nutrition Companies, Inc.*, 186 F.3d 338, 344 (3d Cir. 1999). "[T]he requirements of [R]ule 9(b) may be satisfied if the complaint describes the circumstances of the alleged fraud with precise allegations of date, time, or place *or* by using some means of injecting precision and some measure of substantiation into their allegations of fraud." *Board of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002) (internal quotations omitted) (emphasis in original).

Finally, Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike is to save time and expense through the excision of matter from the pleadings that will not affect the outcome of the case. *Glenside West Corp. v. Exxon Co., U.S.A.*, 761 F. Supp. 1100, 1114-15 (D.N.J. 1991). Motions to strike are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Tonka Corp. v. Rose Art*

6

*Industries, Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993) (citation omitted). A motion to strike should not be used as a vehicle to determine disputed and substantial questions of law or fact. *Glenside West Corp.*, 761 F. Supp. at 1115.

### III.  ANALYSIS

#### A. Green Star's Fraud Claims (Counts I and II)

In Count I of its SAC, Green Star asserts a claim against all Defendants for fraudulent inducement; in Count II, Green Star asserts a claim against all Defendants for fraud. "The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). "The five elements of fraud in the inducement track those of common law fraud." *Microbilt Corp. v. L2C, Inc.*, No. L-1118-09, 2011 WL 3667645, at *3 (N.J. Sup. Ct. App. Div. Aug. 23, 2011). The Court will accordingly analyze Counts I and II together.

Green Star's SAC premises its fraud claims on two discrete occurrences. The first is the July 16, 2018 conversation between Suriano and Green Star's CEO during which Suriano made express assurances "that Green Star would be paid timely in connection with the [Edison Project]." D.E. 45 ¶¶ 58, 69. Green Star avers that Suriano's July 16, 2018 statements "were intentionally false and misleading with a preconceived intent to deceive Green Star, and designed to induce Green Star to sign the contract with Hollister and to work on the [Edison Project] . . . with the prior intention of: (i) withholding payment from Green Star at the end of its work on the [Edison Project] . . . ; and (ii) without basis 'terminating' Green Star from the [Edison Project]." *Id.* The second is Suriano's May 30, 2019 email to Green Star which contained false statements "as an alleged

7

justification for: (i) threatening 'termination of Green Star's subcontract on the [Edison Project]; (ii) locking-out Green Star from the project site; and (iii) refusing to pay Green Star's final invoice." *Id.* ¶¶ 59; 70.  Neither of these statements supports a *prima facie* fraud claim.

"Misrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them." *Banco Popular N. Am. V. Gandi*, 184 N.J. 161, 175 (2005).  The first element of a fraud claim is that a party has made a "material representation of a presently existing or past fact." *CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 158 (D.N.J. 2013).  "Misrepresentations of present or past fact constitute a fairly narrow category, and must be construed so as to maintain the border between actions in tort and contract." *Munenzon v. Peters Advisors, LLC*, 553 F. Supp. 3d 187, 205 (D.N.J. 2021).  "Statements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong." *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998) (citing *Chatlos Sys., Inc. v. Nat'l Cash Register Corp.*, 479 F. Supp. 738, 748-49 (D.N.J. 1979).

Suriano's July 16, 2018 assurances "that Green Star *would* be paid timely in connection with the [Edison Project]," D.E. 45 ¶ 58 (emphasis added), fail to support an actionable fraud claim because those statements speak to future, contingent events.  *Green Star Energy Sols., LLC v. Edison Properties, LLC*, No. 21-CV-2682 (LJL), 2022 WL 16540835, at *6 (S.D.N.Y. Oct. 28, 2022) ("[Green Star's] claim that the Edison Defendants falsely assured it that it would be paid on future contracts, under the terms of those contracts [fails to support a viable fraud claim because it is] . . . entirely dependent upon the existence and content of the future contracts."); *Alexander*, 991 F. Supp. at 436 ("virtually all of the statements plaintiffs recount use words such as 'will,' 'plan' or 'expect' to indicate their future orientation.  However, predictions of the future, which

8

were believed when made, cannot serve as a basis for a fraud claim just because they subsequently turn out not to be true."); *Munenzon v. Peters Advisors*, LLC, 553 F. Supp. 3d 187, 205 (D.N.J. 2021) ("Fraud in the inducement . . . does not cover an ordinary breach of promise about future events.").

And the purportedly false and otherwise unspecified statements in Suriano's May 30, 2019 email fail to support a *prima facie* fraud claim because there are no allegations pled in the SAC which suggest that Green Star ever relied on those statements to its detriment. Indeed, Green Star expressly avers that it ceased working on the Edison Project as of the date of that email, May 30, 2019. *See Green Star*, 2022 WL 16540835, at *5 ("[Green Star's] fraudulent inducement and fraud allegations are deficient for several reasons . . . [including, *inter alia*, because Green Star] fails to adequately plead reasonable reliance on the allegedly fraudulent statement.").

For the foregoing reasons, Green Star has failed to state a *prima facie* fraud or fraudulent inducement claim against any Defendant. Counts I and II will accordingly be dismissed.

### B. Green Star's Tortious Interference with Contract Claim (Count III)

In Count III, Green Star asserts that Defendants tortiously interfered with Green Star's "valid contract with Hollister to act as the subcontractor on the [Edison] Project." D.E. 45 ¶ 75. To establish a tortious interference with contract claim, a plaintiff must prove: (1) an existing contractual relationship; (2) the defendant intentionally interfered with that contractual relationship; (3) the interference was undertaken with malice; and (4) damages resulting from the interference. *Watkins v. Bai Brands*, LLC, No. 3:17-CV-2715-BRM-DEA, 2018 WL 999677, at *6 (D.N.J. Feb. 20, 2018) (citing *Angrisani v. Capital Access Network, Inc.*, 175 F. App'x 554, 557 (3d Cir. 2006)).

Green Star's SAC adequately states a tortious interference with contract claim under this standard. Here, Green Star specifically alleges that: (1) it entered into a contract with Hollister to provide HVAC construction services at the Edison Place Property on or about September 7, 2018, *id.* ¶ 10; (2) the Edison Defendants took over direct day-to-day management of the Edison Project due to their dissatisfaction with Hollister in March of 2019, *id.* ¶ 27; (3) the Edison Defendants locked Green Star out of the Edison Project site on May 30, 2019 "so that it would be impossible for Green Star to finish work or to perform any warranty work as provided for under the subcontract," *id.* ¶¶ 37, 38; (4) the Edison Defendants' employee/project manager on the Edison Project, Robert Gerardo, withheld critical information and limited Green Star's access to the work site to hinder Green Star's progress on the Edison Project, *id.* ¶ 32; (5) the Edison Defendants tried to hire several of Green Star's on-site technicians "in an attempt to cut out Green Star from the project," *id.* ¶ 41; and (6) Green Star is still owed $220,060.58 for work it completed under its contract with Hollister, *id.* ¶ 44.

The Court will accordingly deny that portion of Defendants' motion which seeks dismissal of Count III. *Accord Green Star*, 2022 WL 16540835, at *16 ("Because [Green Star] has adequately stated a claim for tortious interference with contract, the Edison Defendants' motion to dismiss this claim is denied.").

### C. Green Star's Breach of Contract Claim (Count IV)

Count IV of Green Star's SAC asserts a breach of contract claim against the Edison Defendants. More specifically, Green Star asserts: (1) that "[t]he Edison Defendants and Green Star entered into an oral contract whereby in return for Green Star becoming the HVAC subcontractor on the [Edison Project], Suriano and/or the Edison Defendants, assured Green Star that it would be paid timely on a monthly basis on each invoice it issued on the project, regardless

of whether each payment was to be made by Hollister or directly by one or more of the Edison Defendants, or by some other party;" and (2) that the Edison Defendants breached this oral contract because "Green Star was never paid in a timely manner" and "never received payment on its final invoice, and is still owed $220,060.58 for its work on the [Edison] Project."  D.E. 45 ¶¶ 83, 85, 86.

As the facts alleged in the SAC make clear, the only written contract was between general contractor Hollister and subcontractor Green Star.  *See id.* ¶ 24 ("[o]n or about September 18, 2018, Green Star entered into a contract with Hollister for Green Star to act as the HVAC subcontract on the [Edison] Project.").  Green Star alleges that it remains owed $220,060.58 for the work it performed pursuant to that agreement.  *See id.* ¶ 33 ("Green Star . . . effectively completed the contracted work on the [Edison] Project prior to . . . June 1, 2019.").  Green Star, to be clear, plausibly alleges only that the Edison Defendants made an oral promise to honor any payment obligations owed to Green Star under its written contract with Hollister.  Such an oral contract, however, is unenforceable under the New Jersey Statute of Frauds.  *See* N.J. Stat. Ann. 25:1-15 ("A promise to be liable for the obligation of another person, in order to be enforceable, shall be in a writing signed by the person assuming the liability or by that person's agent.").  Indeed, such a "promise of guarantorship must be in writing and signed by the guarantor or his agent."  *Indagro SA v. Nilva*, 733 F. App'x 50, 52 (3d Cir. 2018).  Count IV is accordingly dismissed.

### D.  Green Star's Third-Party Beneficiary Breach of Contract Claim (Count V)

In Count V, Green Star asserts a claim for breach of contract as a third-party beneficiary. Green Star, more specifically, asserts that: (1) "Hollister entered into a general construction contract with . . . the Edison Defendants in connection with the [Edison] Project," D.E. 45 ¶ 91;

11

(2) Green Star "is an intended third-party beneficiary" of that contract pursuant to language within that contract regarding subcontractors, *id.* ¶ 92; (3) the Edison Defendants acknowledged "Green Star's status as an intended third-party beneficiary" by virtue of the direct payment that Edison Properties made to Green Star on April 2, 2019, *id.* ¶ 93; and (4) the "Edison Defendants breached Green Star's rights as a third-party beneficiary under [that contract] by refusing to make payment [of $220,060.58] on its final invoice on the [Edison] Project," *id.* ¶ 95."

To state a breach of contract claim as a third-party beneficiary, a plaintiff must "show that the contract was made for the benefit of that third party within the intent and contemplation of the contracting parties." *Grant v. Coca-Cola Bottling Co. of New York, Inc.*, 780 F. Supp. 246, 248-49 (D.N.J. 1991) (citing *First National State Bank of New Jersey v. Commonwealth Federal Savings and Loan Assoc.*, 610 F.2d 164, 170 (3d Cir. 1980)). "A third-party who merely stands to benefit from a contract is no more than an incidental beneficiary who incurs no contractual right to enforce the contract." *Id.* (citing Restatement (Second) of Contracts § 315 at 477 (1979)). "[T]he intention of the parties to recognize a right of performance in the third party is the critical factor that governs the characterization of the beneficiary." *Berel Co. v. Sencit F/G McKinley Assoc.*, 710 F. Supp. 530, 537 (D.N.J. 1989).

Here, Green Star alleges that it is a third-party beneficiary of a written contract between Hollister and the Edison Defendants. This conclusory statement, however, is insufficient to state a claim for a third-party beneficiary breach of contract claim. The "critical factor" in determining whether a third party can assert rights as a third-party beneficiary is the intention of the contracting parties. *See Berel*, 710 F. Supp. at 537. Indeed, the "real test" in determining if a party is a third-party beneficiary to a contract is "whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts." *Brooklawn v. Brooklawn Housing Corp.*,

12

11 A.2d 83, 85 (N.J. 1940). Green Star's conclusory allegations are insufficient to demonstrate that Hollister and the Edison Defendants intended for their contract to give Green Star a benefit which might be enforced in the courts. *See Villegas v. Correctional Med. Servs., Inc.*, No. 14-7337, 2016 WL 3708218 (D.N.J. July 12, 2016) (dismissing third-party beneficiary claim where plaintiff had not provided supporting facts "[o]ther than his conclusory allegation that he is an intended third-party beneficiary"); *Atlas Commc'ns Tech., Inc. v. DXC Tech. Servs., LLC*, No. 319CV19033BRMDEA, 2020 WL 5105197, at *3 (D.N.J. Aug. 31, 2020) (same). As such, Green Star has failed to adequately allege a third-party beneficiary claim. The Court will accordingly dismiss Count V.

### E.  Green Star's Quantum Meruit Claim (Count VI)

In Count VI, Green Star asserts a claim for quantum meruit, *i.e.*, unjust enrichment, against the Edison Defendants. *See MK Strategies, LLC v. Ann Taylor Stores Corp.*, No. CIV.A.1:07CV02519, 2007 WL 4322796, at *3 n.4 (D.N.J. Dec. 6, 2007) ("Unjust enrichment claims may also be referred to as 'quasi-contract' or 'quantum meruit' claims."). To establish a claim for unjust enrichment under New Jersey law, "a plaintiff must allege that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 723-24 (D.N.J. 2011).

Green Star's SAC alleges that it remains owed $220,060.58 for HVAC services it performed at the Edison Place Property. It has alleged that the Edison Defendants took over general contracting responsibilities from Hollister, and that the Edison Defendants thereafter made one payment to Green Star directly. Green Star has accordingly alleged that it has conferred a benefit on Defendants and that denying it recovery for the remaining $220,060.58 would be unjust.

13

Green Star, at this early stage, has therefore adequately pled a claim for unjust enrichment. *See In re Prudential Ins. Co. of America Sales Practices Litigation*, 975 F. Supp. 584, 621-22 (D.N.J. 1996) (refusing to dismiss plaintiff's unjust enrichment claim because it was too early in the proceedings to determine whether the relationship between the parties was governed by a valid and enforceable contract); *Horgan Bros. v. Monroe Prop., L.L.C.*, No. 07-CV-3028 NLH KMW, 2011 WL 794389, at *4 (D.N.J. Feb. 28, 2011) (denying property owner's motion for summary judgment on subcontractors' unjust enrichment claim where subcontractor "present[ed] some evidence to suggest that services performed in response to [property owner's] change orders exceeded the scope of [the] subcontracting agreement with [the general contractor] and created a quasi-contractual relationship"); *but see Insulating Contracting & Supply v. Kravco, Inc.*, 209 N.J. Super. 367, 378 (App. Div. 1986) ("[i]f the party conferring a benefit does so pursuant to a contract with a third party, then non-performance by the other party to the contract does not entitle the party conferring the benefit to repayment from the recipient on a theory of restitution or unjust enrichment.") (cleaned up).  For these reasons, Defendants' motion to dismiss Count VI is denied.

### F.  Green Star is Granted Leave to Amend

Dismissal of Counts I, II, IV and V is without prejudice, and Green Star will be afforded one final opportunity to amend its complaint to address the pleading deficiencies identified herein. Leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  There has been no prior dismissal decision rendered in this matter and Defendants have not demonstrated that it would be prejudicial, futile, or otherwise unfair for Green Star to be given leave to amend.  It is consistent with principles of fairness and justice to afford Green Star an opportunity to amend.  Green may file an amended complaint within 30 days of the date of this Opinion.

### G. Defendants' Motion to Strike

Defendants argue that paragraphs 20-22 of the SAC should be stricken pursuant to Rule 12(f) as irrelevant and defamatory. D.E. 60 p. 14. The Court cannot agree. Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Rule allows for excision of matter from the pleadings that will not affect the outcome of the case. *Glenside West*, 761 F. Supp. At 1114-15. Motions to strike are "not favored and usually will be denied unless the allegations have no possible relation to the controversy . . . ." *Tonka Corp.*, 836 F. Supp. at 217.

Paragraphs 20-22 of the SAC relate to the alleged Edison Final-Payment Fraud scheme. Paragraph 20 details this scheme and paragraphs 21 and 22 provide additional facts to support Green Star's allegations about the existence of the scheme. D.E. 45 ¶¶ 20-21. Although these allegations are particularly relevant to Green Star's now-dismissed fraud claims, the Court cannot say at this time that they have no relevance to Green Star's still-pending tortious interference and unjust enrichment claims against the Edison Defendants. *Green Star*, 2022 WL 16540835, at *18. Thus, at this point, it cannot be said that Paragraphs 20-22 will have no impact on the outcome of the case. *Glenside West*, 761 F. Supp. at 1114-15. Defendants' Rule 12(f) motion to strike paragraphs 20-22 of the SAC is accordingly denied.

### IV. CONCLUSION

For the reasons above, Defendants' motion is **GRANTED in part** (as to Counts I, II, IV, and V) and **DENIED in part** (as to Counts III and VI, and with respect to their motion to strike paragraphs 20-22 of the SAC).

Dated: March 8, 2023

_____
Evelyn Padin, U.S.D.J.